IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

PAUL PENKALSKI,

    Plaintiff,

    v.                              Case No. 17-CV-287

CHRISTOPHER COLE, DIRECTOR OF
THREAT INTERVENTION SERVICES
OF THE UNIVERSITY OF WISCONSIN-
MADISON POLICE DEPARTMENT,

    Defendant.

## DEFENDANTS' PROPOSED FINDINGS OF FACT

**Background Information**

    1.    Since November 2013, Defendant Christopher Cole has been employed as the Director of Threat Intervention Services at the University of Wisconsin-Madison Police Department (UWPD). (Christopher Cole Declaration, June 29, 2017, ¶ 2.)

    2.    As the Director of Threat Intervention Services, Cole works with other members of the University community to evaluate threats to the university and he helps to develop strategies to mitigate these threats. The goal is for faculty to teach, researchers to research, and students to learn in a safe and secure environment. (Cole Decl. ¶ 4.)

3. The Wisconsin Legislature has delegated to the Board of Regents the authority to regulate access to the University grounds. (Cole Decl. ¶ 5; Wis. Admin. Code § UWS 18.11(7)(e).)

4. Regulating access to the University grounds includes the ability to ban persons from entering onto University grounds. A person may be banned from University grounds when he or she is a threat to the health, safety, and welfare of the University. (Cole Decl. ¶ 6; Wis. Admin. Code § UWS 18.11(7)(e).)

5. When it appears that a campus ban under Wis. Admin. Code § UWS 18.11(7)(e) might be appropriate, information concerning the individual and the reason for the proposed ban is brought to Cole, who gathers additional information and discusses the proposed ban with members of the threat assessment team. (Cole Decl. ¶¶ 7-8.)

6. If the consensus of the threat assessment team is that a ban should be pursued, Cole briefs the Chief of the University of Wisconsin-Madison Police, and then the Chief briefs members of the Campus Threat and Disruption Oversight Group (CTDOG). (Cole Decl. ¶¶ 9-10.)

7. In addition to the Chief of the University of Wisconsin-Madison Police, the CTDOG is comprised of the Vice Provost and Dean of Students, the Vice Chancellor for Legal Affairs, the Director of University Health Services, and the Director of the Office of Human Resources. (Cole Decl. ¶ 11.)

8. If members of the CTDOG concur with the proposed ban, the Chief then briefs the Chancellor. (Cole Decl. ¶ 12.)

9. If the Chancellor approves of the proposed ban, Cole drafts and issues a letter that is furnished to the individual that is to be banned. (Cole Decl. ¶ 13.)

10. A photograph and descriptive information concerning the banned person is then placed on the University of Wisconsin-Madison website. (Cole Decl. ¶ 14.)

**Paul Penkalski's Ban From Campus In October 2016**

11. Between 2004 and 2016, there were 76 reports made to the UWPD regarding Penkalski's behavior, including previous stalking incidents, vandalism, and disorderly conduct. The majority of the reports pertained to Penkalski being present at the Memorial Union after being banned pursuant to Wis. Admin. Code § UWS 18.11. (Cole Decl. ¶¶ 16-17, Ex. 1001-1004.)

12. Penkalski has proven himself a threat to the University's students and staff and, therefore, has been banned from UW-Madison's campus or portions thereof on more than one occasion. (*See* Ex. 1002.)

13. On October 19, 2016, the UWPD was contacted by a student and employee of the University. (Cole Decl. ¶ 21, Ex. 1005.)

14. The student reported that Penkalski had been stalking her. (Cole Decl. ¶ 22, Ex. 1005.)

15. The student reported at least 10 unwanted contacts starting on July 8, 2016, occurring at both the Memorial Union and at her office in Weeks Hall. (Cole Decl. ¶ 23, Ex. 1005 at 2-5.)

16. The student reported that during these contacts, Penkalski followed her around, invaded her personal space, and attempted to talk to her in "suggestive tones." (Cole Decl. ¶ 24, Ex. 1005 at 2-5.)

17. The student reported that on one occasion, Penkalski pushed between her and the locker she was using, causing her to back up and her boyfriend to step between them to defend her. On another occasion, he refused to let go of her hand after she shook his hand. (Cole Decl. ¶ 25, Ex. 1005 at 3.)

18. The student told the police that she was afraid of Penkalski and that she had trouble sleeping because of him. She reported that he disturbed her so much that she was considering leaving Madison after she completed her PhD, and that she would leave work early so that she would not be alone in the lobby with him. (Cole Decl. ¶ 26, Ex. 1005 at 2-5.)

19. On October 20, 2016, a UWPD Detective attempted to deliver a stalking letter to Penkalski at his apartment. (Cole Decl. ¶ 27, Ex. 1005 at 8-9.)

20. After Penkalski refused to accept the letter, it was slipped under his door. (Cole Decl. ¶ 28, Ex. 1005 at 8-9.)

4

21. As the detective was leaving, Penkalski opened the door and threw the letter back at the detective. (Cole Decl. ¶ 29, Ex. 1005 at 8-9.)

22. The stalking letter named the student and advised Penkalski that she felt unsafe around him, essentially serving as a warning to stay away from her. (Cole Decl. ¶ 30, Ex. 1005 at 8-9.)

23. Despite the warning from the University of Wisconsin-Madison Police Department to stay away from the student, Penkalski was observed at the Memorial Union on October 22, 2016 and October 23, 2016, and at Weeks Hall, where the student worked, on October 24, 2016. (Cole Decl. ¶ 31, Ex. 1005 at 13-15.)

24. Based on the student's report and Penkalski's continued behavior, Cole discussed a possible campus ban with Detective Truli Nielsen, who was assigned to investigate this incident. (Cole Decl. ¶ 32.)

25. Cole then followed the proper process for instituting a campus ban. (Cole Decl. ¶ 33.)

26. Cole created a summary of Penkalski's past incidents with the University and the most recent issues from October 2016, and provided it to then Acting UWPD Chief Brian Bridges so that he could brief the other CTDOG members and the Chancellor. (Cole Decl. ¶ 34, Ex. 1002.)

27. It was determined that a campus ban was appropriate pursuant to Wis. Admin. Code § UWS 18.11(7)(e), so Cole drafted a letter to Penkalski

5

dated October 31, 2016, which explained that Penkalski was being banned from campus. (Dkt. 1-1, Compl.)

28. The ban is not indefinite, but, rather, is operative for two years and expires on October 31, 2018, or earlier if lifted by Cole. (Cole Decl. ¶ 35; Dkt. 1-1, Compl.)

29. On October 31, 2016, after several failed attempts to hand deliver a ban letter to Penkalski at his residence, Penkalski was emailed and sent a copy of the ban letter by certified mail. (Cole Decl. ¶ 36, Ex. 1005 at 16.)

30. Officers continued to attempt to hand deliver a copy of the ban letter to Penkalski, and on November 4, 2016, Penkalski sent an email to Police Chief Bridges, acknowledging that he received the ban letter. (Cole Decl. ¶ 37, Ex. 1005 at 17-18.)

31. On December 1, 2016, Detective Nielsen contacted the student by email to check on her regarding the case. The student reported that she had not had any contact or problems with Penkalski and stated that she felt "like life is returning back to normal." (Cole Decl. ¶ 38, Ex. 1005 at 19.)

32. On December 1, 2016, Penkalski's counsel requested a contested case hearing under Wis. Stat. § 227.42 regarding the ban from the UW-Madison campus. (Christopher Blythe Declaration, August 7, 2017, Ex. 1006 at 10-11.)

33. By letter dated January 5, 2017, Cole denied Penkalski's request for a hearing, stating that his request did not satisfy the criteria for granting a hearing under the referenced statute. (Blythe Decl., Ex. 1006 at 13-14.)

34. Penkalski filed an action in Dane County Circuit Court (Dane County Case No. 17-CV-297) on February 28, 2017, but failed to serve it on the defendant within 30 days, as required by statute. (Blythe Decl., Ex. 1006 at 1-8, 17-21.)

35. That matter was dismissed with prejudice by stipulation of the parties on June 28, 2017. (Blythe Decl., Ex. 1006 at 22.)

Respectfully submitted this 22nd day of August 2017.

BRAD D. SCHIMEL
Wisconsin Attorney General

s/ Christopher J. Blythe
CHRISTOPHER J. BLYTHE
Assistant Attorney General
State Bar #1026147

SHANNON A. CONLIN
Assistant Attorney General
State Bar #1089101

Attorneys for Defendant
Christopher Cole

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-0180 (Blythe)
(608) 266-1677 (Conlin)
(608) 267-8906 (Fax)
blythecj@doj.state.wi.us

7

conlinsa@doj.state.wi.us

8